(100 South. 407)

Nos. 24381, 24693.

## HAMMOND LUMBER CO. v. HILGNER.

(April 30, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Logs and logging** ⬤⇒3(15) — **Finding that lumber company had not shown reasonable diligence in removal of timber sustained.**

In an action by lumber company, to be declared owner of timber on certain lands under mesne conveyances from defendant, evidence *held* to sustain finding that plaintiff and its vendors had not shown reasonable diligence in attempting to remove the timber, notwithstanding a walkout in their mill.

2. **Logs and logging** ⬤⇒3(14)—**Owner of land held not estopped by custom as to granting of extensions for removal of timber.** ·

Where lumber company sought to be declared owner of certain timber under mesne conveyances from defendant owner of land, the latter was not estopped from asserting that time for removing timber had expired, by any custom of granting extensions.

3. **Logs and logging** ⬤⇒3(14)—**On expiration of time for removal of timber it reverts to owner of land.**

When time allowed in timber deed for removal has expired without timber being cut, it reverts to owner of land, unless some stipulation clearly evidences different intent.

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Suit by the Hammond Lumber Company against Miss Emma Hilgner. Judgment for defendant, and plaintiff appeals. Affirmed.

Fred J. Heintz and Adrian D. Schwartz, both of Covington, for appellant.

Benjamin M. Miller, of Covington, and A. Sidney Burns, of Ponchatoula, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE. In this cause, Mr. Justice LECHE being absent, Mr. Justice ROGERS took part in the determination thereof.

DAWKINS, J. Plaintiff filed this suit on May 26, 1920, alleging itself to be the owner of the timber upon certain lands situated in the parish of St. Tammany, acquired by mesne conveyances from the defendant, Emma Hilgner; that the time limit fixed for its removal in the original deed was five years and six months from March 1, 1911, but that there had been two extensions which had carried the period for removal to December 31, 1919; that about the 1st day of November, 1919, just as it had com-

pleted arrangements for cutting the timber, its mill was shut down by a strike or "walkout" of its employees and remained closed until January 6, 1920; "that petitioner was unable on account of said strike or 'walkout' to resume its operations until the 6th day of January, 1920, and that it was physically impossible because of the prevailing of the post-war conditions and general labor disturbances of the country to cut and remove said timber, and that, reposing confidence on the settled jurisprudence of this state had regarding the ownership of its said timber, as well as the recorded custom of the said Emma Hilgner to grant additional periods within which to cut and remove its said timber, as well as absence from the sale of any specific clause (to) defeat the title of petitioner or his grantor, petitioner had as soon as his logging operations could be resumed, prepared to remove its timber from the lands of the said Emma Hilgner; but that on or about the 10th day of April, 1920, the said Emma Hilgner warned your petitioner in writing not to trespass on her said lands in order to remove its said timber"; that the said Emma Hilgner claimed she had sold said timber to another party and given him four years in which to remove it. Plaintiff further alleged as follows:

"Petitioner shows that, the said Emma Hilgner having elected to retain the purchase price of petitioner's property and that having established a recorded custom of granting an extension so that the original purchaser and his assigns might obtain additional time within which to enter upon her said lands to remove their said property, the said Emma Hilgner is estopped from attempting, to work a forfeiture of petitioner's right of ownership without sufficient notice to petitioner to protect itself in the premises; and that the said timber above described is in fact and in truth the legal property of your petitioner; and that the said Emma Hilgner threatens to sell, part with, or dispose. of the said property to the detriment and loss of said petitioner; and that a writ of sequestration is necessary to protect your petitioner in the premises."

It was also alleged that under date of May 6, 1920, plaintiff had "tendered to the defendant any sum in damages which might be legally assessed for the technical entry upon the defendants' lands by your petitioner with a view of cutting and removing its said timber"; that she had declined in writing on May 8th to consider same, and at the same time informed petitioner she had sold said timber.

Finally, plaintiff made. the necessary allegations, and sequestered the timber; prayed that she be decreed the owner of said property subject to such damages as the court might find defendant entitled to receive by virtue of its entry upon the land to cut the timber; and, further, that the .court grant it "a reasonable additional time within which to cut and remove the said timber from the lands in question."

There were attached and made part of the petition all transfers and extensions up to and including the one which expired December 31, 1919.

Defendant filed a motion to dissolve the sequestration upon the face of the pleadings, which, after hearing, was done, and plaintiff prosecuted a suspensive appeal therefrom, and this is covered by the transcript No. 24381.

Thereafter defendant filed an exception, in which it was averred that plaintiff had alleged that defendant had sold the property, and she attached to said exception certified copy of the act of sale by her to one James M. Barringer, dated April 28, 1920, which she averred had been passed before the sequestration was served, and that therefore she had no interest in the subject-matter of the litigation; and, second, that the petition disclosed no cause of action. She accordingly prayed that plaintiffs' 'suit be dismissed and her right to sue for damages for the alleged illegal issuance of the writ of sequestration be reserved. The latter ex.

ception does not appear to have been passed upon; but defendant finally answered, admitting the giving of the original timber deed and extensions as alleged; but averred that the time within which to cut it under each had expired, and that for this reason plaintiff had forfeited all interest therein. Otherwise she denied the allegations, and averred that, acting within her legal rights she had sold the timber. She then reconvened for damages as attorney's fees for dissolving the writ.

The case was tried on its merits, and there was judgment for defendant rejecting plaintiff's demands and awarding her $250 as attorney's fees.

Plaintiff again appealed, and this is covered by the transcript No. 24639.

The two records have been consolidated in this court, and both appeals will be disposed of in one opinion.

### Opinion.

It is not worth while to consider the appeal from the dissolution of the sequestration apart from the merits, for the whole case is now before us, and our decision will dispose of the entire matter.

The first question we shall discuss is the contention of plaintiff that it was prevented by uncontrollable causes from removing the timber. A careful examination of the record convinces us that the lower court was correct in finding that there was no substantial basis for this contention. The vice president of plaintiff company testified that, when they bought the timber in April, 1919, their tram road was within one-half mile of it, and that they had cut some of it which had blown down and was dying as a result of a storm; that they were operating on it when the mill was shut down on October 2, 1919 (the time limit expired December 31, 1919), and had cut approximately 1,100,000 feet. He further testified that during the World War the mill operated under the direction of the Emergency Fleet Corporation, and cut lumber for the building of ships. The Armistice was signed November 11, 1918. The capacity of the mill was a little over 1,000,000 feet per month. All of its other timber was owned in fee simple, and this was the only "timber rights" which it had. There was a "walkout" of its employees October 2, 1919, and this continued until January 6, 1920; plaintiff employed about 225 men, and could have removed the timber off the land within 12 to 15 days. Another concern owned a strip of land across which plaintiff wished to build its tram, and objected at first to the latter crossing said property. This was in September, but this same witness testified that the difficulty could probably have been adjusted had the strike not come. No intimation was given by defendant that the timber could not be cut after January 1, 1920, before that date arrived, but she refused thereafter to extend the time. Defendant owned the land surrounding the tract, but found it more convenient to cross the property of the other party, and on the point as to why the timber was not cut testified in part as follows:

"Q. Why didn't you cut this timber first, that you had the time limit on, this other was timber you owned in fee, and could cut at any time?

"A. That's not possible from a lumberman's standpoint. We have to carry on the operations systematically, and we thought there would be no objection raised.

"Q. You knew when the time limit expired?

"A. We thought when we purchased the timber we would have more time. The custom had been to extend the time.

"Q. Who told you that—Mrs. Hilgner?

"A. No. We thought in a short time we'd have it off then.

"Q. Isn't it a fact that it was in October and not September that Mr. Dindinger interfered with you, kept you from going on his land to get to the Hilgner tract?

"A. It was about September.

"Q. It was not August?

"A. No, sir; I am positive about that. I have refreshed my memory on that point.

"Q. You say Mrs. Hilgner never gave you any notice since September 1, 1919?

"A. She did not.

"Q. Did you apply to her for an extension?

"A. I did not to my knowledge, I have a landman that looks after things of that kind, if he did directly or indirectly, I don't know, I am 'not positive.

"Q. You think maybe your landman did?

"A. It's possible the request was made.

"Q. It's possible that it might have been approved?

"A. It's possible."

[1] From all of which we conclude that there was no reasonable diligence shown on the part of plaintiff and its vendors in attempting to remove the timber. Defendant had given two extensions aggregating 3½ years, in each instance, according to the facts, for the sum of $1, and it is not even intimated that she was in any way responsible for the failure to remove it from the land.

[2] Neither do we find that there is anything in the assertion that defendant is estopped because of any "custom" of granting extensions. It is true that she did so twice, practically without consideration; but we cannot see how this bound her to do so again or indefinitely.

[3] The remaining question is one which appears to have been settled in this state, as well as in other jurisdictions; and that is that, when the time allowed in a timber deed for removing has expired without the timber being cut, it reverts to the owner of the land, in the absence of some stipulations which clearly evidence a different intention of the parties. St. Louis Cypress Co. v. Thibodaux, 120 La. 834, 45 South. 742.

The cases relied upon mainly by plaintiff are: Kavanaugh v. Frost-Johnson Lumber Co., 149 La. 972, 90 South. 275; and Ward v. Hayes-Ewell Co. (La.) 98 South. 740.[1] In the former there was no time limit fixed, and the plaintiff there had attempted, by merely notifying defendant that he would allow only ten years for a removal, to fix a period himself, and it was simply held that this could not be done; that the proper procedure was to apply to the courts to have a reasonable time fixed judicially; and, until this had been done, defendant had the right to go ahead and cut the timber.

In Ward v. Hayes-Ewell Co., plaintiff alleged that he was the owner of the timber upon certain described lands, because the time limit for cutting had expired, and claimed the ownership of lumber which had been manufactured therefrom less the costs of manufacture. The lower court having sustained an exception of no cause of action, this court reversed the ruling and remanded the case, citing the several decisions rendered since St. Louis Cypress Co. v. Thibodaux, supra, and the passage of Act 188 of 1904. However, we there again held, as we had done in the several cases cited in that decision, that, if the timber were not removed within the period fixed by the deed, it reverted to the owner of the land.

All of the arguments now made by plaintiff with regard to the resolutory condition and the necessity for suing to forfeit the right to the timber by the owner of the land appear to have been considered and disposed of adversely to its contention in the cases heretofore mentioned dealing with the subject now in hand.

For the reasons assigned, the judgment of the lower court is affirmed.

---

[1] 155 La. 15.