On June 30, 1939 the plaintiffs in this case, the law firm of Kay Kay, contracted with Vonnie Fountain and his brothers and sisters, all heirs of Mrs. F.M. Fountain, to recover for them a certain tract of timber land in Vernon Parish which had been sold at a tax sale, on a contingent fee.
By the terms of the contract of employment the plaintiffs were to be paid for their services, in the event they were successful, "One-half of the timber located on said property, or one-half of the net proceeds realized from the sale of said timber after deduction from the proceeds of such sale all actual expenses in clearing said title * * *." By the terms of the contract it was understood that there were approximately 300,000 feet of merchantable timber on the property.
In pursuance of their contract of employment as such attorneys, plaintiffs instituted and successfully prosecuted a suit against the Kirby Lumber Company, the then record title owner of the property, in the district court of Vernon Parish. The judgment in favor of their clients was affirmed on appeal to this court (See Fountain v. Kirby Lumber Corp., La. App., 199 So.2d 603) and then became final.
On October 4, 1941, Vonnie Fountain, acting individually and as agent and attorney in fact for his brothers and sisters, his coheirs, entered into a contract of sale for the timber on the property to Mansfield Hardwood Lumber Company, hereinafter referred to as "Mansfield Company." The sale specifically provided that there was thereby conveyed all pine timber 12 inches in diameter and larger and all hardwood timber 14 inches in diameter and larger, cut not less than 12 inches from the ground, and the purchaser was given three years within which to remove it, with all necessary rights and privileges of ingress and egress in, to and over the land, for the purpose of deadening, cutting and removing the said timber.
The purchase price for the sale of the timber was the sum of $2,100 cash which was paid by the Mansfield Company, after which they went upon the property and cut and removed a large quantity of it. There is some question as to the exact number of feet that were cut but it is not disputed that there were several thousand feet of timber of the dimension sold which remained on the property at the expiration of the three year period during which the purchaser was to cut and remove it.
The $2,100 given in payment by Mansfield Company was turned over to Kay Kay, the attorneys, and after giving a statement of all expenses of the litigation, which amounted to $505.72, to the defendants by letter, the balance remaining was equally divided and each party to the contract received $796.09.
Some time after, the defendant sold more timber, including some of that which *Page 761 
had remained on the property after the expiration of the three year period given to Mansfield Company to remove it, to a man named Roy Powell and upon learning of this sale the plaintiffs instituted this suit against the Fountain heirs and against Powell demanding an accounting for all the timber sold off the land and also asking to be decreed the owners of an undivided one-half interest in and to all such timber.
After trial in the district court, there was judgment rejecting the plaintiffs' demand for an accounting of any of the timber which had been sold to Mansfield Company and which had not been removed by them, and in favor of the plaintiffs to the extent that it decreed them to be the owners of an undivided one-half interest in and to all the timber that was not included in the sale to Mansfield Company in 1941, reserving to them the right to bring a suit to have the question as to the amount of such timber determined. In effect the judgment was that all the timber of the dimensions sold in the Mansfield Company sale which had not been cut and removed within the three year period had reverted to the defendants, exclusively, and the only interest the plaintiffs had remaining to them was their one-half of the proceeds of the timber that had not been sold by such dimensions to the Mansfield Company.
Plaintiffs had, by supplemental petition, obtained a writ of attachment against all defendants who are absentees, but this attachment was dissolved as a result of the judgment against them.
From the judgment rendered plaintiffs have taken this appeal.
The plaintiffs had never had their contract with the Fountain heirs recorded and it never operated in favor of or against any third party who may have acquired any interest in the timber. That is the reason, no doubt, why their demand against Powell, as one of the defendants in the suit, was abandoned by them.
The sole question presented in the case is one of law and that is whether, with regard to the timber of certain specifications conveyed in the Mansfield Company sale, plaintiffs are precluded from claiming any interest in that part of that timber which reverted back under the three year period clause in the contract.
[1] The jurisprudence of this state is rather emphatic in holding that in a sale of timber by the owner of the land on which it stands, and in which a period for its removal is agreed to and fixed by the parties, all timber remaining on the property at the expiration of that period reverts to the owners of the land. Ward v. Hayes-Ewell Co., 155 La. 15, 98 So. 740; Hammond Lumber Co. v. Hilgner, 156 La. 229, 100 So. 407; Willets Wood Products Co. v. Concordia Land Timber Co.,169 La. 240, 124 So. 841, 71 A.L.R. 140; Crowell Spencer Lumber Co. v. Burns, 191 La. 733, 186 So. 85. As between the Mansfield Co. and the defendants in this case, there can be no doubt therefore, that the Mansfield Company has lost all interest it may have acquired in the timber and the only question at issue is whether the plaintiffs have any right in that reversionary interest by reason of their contract with the defendants.
The first thought which occurs to us in construing that contract is that it is one in which there are alternative obligations. Article 2066 of the R. C. C. which relates to alternative obligations reads as follows: "But where the things, which form the object of the contract, are separated by a disjunctive, then the obligation is alternative. A promise to deliver a certain thing, or to pay a specified sum of money, is an example of this kind of obligation."
[2, 3] As already stated plaintiffs never had their contract with the Fountain heirs recorded in the Conveyance Records of the Parish. Notwithstanding the fact that by the terms of Article 2068 of the Code, the option of choosing one of the two alternatives belongs to the debtor, had the plaintiffs recorded their contract it may well have been that they would have then, become the unconditional owners of one-half of all the timber situated on the property because, by letting them have the contract recorded, the defendants (debtors in this case) might then be held to have granted them the right to have the contract *Page 762 
discharged in that manner, a thing they could do according to the same Art. 2068. But this was never done and there can be no doubt, and it is not disputed, that when these defendants, as obligors under the contract, chose to sell the timber and pay the plaintiffs one-half of the proceeds, they exercised the option which they had under the law, and that was the manner in which the contract had to be discharged. The plaintiffs certainly acquiesced in this method of discharge in so far as the timber of certain dimensions sold to Mansfield Company was concerned as they themselves settled with the defendants and accepted one-half of the proceeds of that sale.
[4] Therefore, with regard to the sale of the pine timber of 12 inches and over and the hardwood timber of 14 inches and over, that was standing on the property on the date of the sale to Mansfield Company in 1941, the matter is foreclosed as far as the plaintiffs are concerned and whatever of that timber was left standing on the property at the expiration of the period for removing it under the contract of sale, is now the property of the defendants, exclusively, they having discharged their obligation in full with regard to a sale of that part of the timber, to the plaintiffs.
With regard to whatever timber outside of that of the dimensions sold to Mansfield Company, there was no sale of that until the sale to Powell took place and under their contract with defendants, plaintiffs are entitled to an accounting of the proceeds and should be permitted to recover one-half of the amount of money involved.
We find no inconsistency as argued by plaintiffs, in saying that if they are entitled to their interest in the proceeds of the sale of any timber that was not sold to Mansfield Company, they are not entitled to any of the interest in the timber that reverted back under that sale. There could have been, as there turned out to be, more than one sale of the timber under the contract, but each sale was a completed matter as far as the plaintiffs are concerned and they should not be allowed to recover twice on the same sale.
We believe that the judgment appealed from correctly disposed of the issues involved in the case and it will therefore be affirmed.
Judgment affirmed at the cost of the plaintiffs, appellants, herein.